1
2
                                 FILED IN THE
                            U.S. DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON

3
                 **Jan 10, 2024**

                SEAN F. McAVOY, CLERK

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7  JUAN G.,

8                          Plaintiff,               NO:  1:22-CV-3142-RMP

9        v.                                          ORDER DENYING PLAINTIFF'S
                                                     BRIEF AND GRANTING
10 COMMISSIONER OF SOCIAL                            DEFENDANT'S BRIEF
   SECURITY,

11                         Defendant.

12

13        BEFORE THE COURT, without oral argument, are briefs from Plaintiff Juan

14 G.[1], ECF No. 12, and Defendant the Commissioner of Social Security (the

15 "Commissioner"), ECF No. 14.  Plaintiff seeks judicial review, pursuant to 42

16 U.S.C. § 405(g), of the Commissioner's denial of his claims for Social Security

17 Income ("SSI") under Title XVI, and Disability Insurance Benefits ("DIB") under

18 Title II, of the Social Security Act (the "Act").  *See* ECF No. 12 at 1–2.

19 _____

20 [1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
   name and last initial.

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 1

Having considered the parties' briefs including Plaintiff's reply, ECF No. 15, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court denies judgment for Plaintiff and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff applied for SSI and DIB on approximately February 8, 2019, alleging disability onset on June 14, 2018.  Administrative Record ("AR")[2] 216–29.  Plaintiff was 36 years old on the alleged disability onset date and asserted that he was unable to work due to a variety of conditions, including: sleep issues/night terrors; dry mouth; nausea; severe depression; harm to self or other; arm pain; poor appetite; repeatedly going over thoughts; moodiness; pre-diabetes; gestation 2 dysfunction; severe anxiety/panic attacks; chest pains; shortness of breath; severe sweating in hands and feet; tense muscles; dizziness; heart palpitations; restlessness; constant fear; agitation/irritability; excessive crying; social isolation; lack of concentration; slow to act; sadness; paranoia; and post-traumatic stress disorder ("PTSD").  AR 257.  Plaintiff's claims proceeded to a telephonic hearing before Administrative Law Judge ("ALJ") Laura Valente on September 17, 2020.  AR 40–72.  Plaintiff was

---

[2] The Administrative Record is filed at ECF No. 10.

present and represented by attorney Timothy Anderson.  AR 40–42.  The ALJ heard

from vocational expert ("VE") Mr. Swanson[3] and from Plaintiff.  AR 48–72.  ALJ

Valente issued an unfavorable decision on September 28, 2020.  AR 24–34.

***ALJ's Decision***

Applying the five-step evaluation process, ALJ Valente found:

**Step one:** Plaintiff meets the insured status requirements of the Act through

December 31, 2023.  AR 21.  Plaintiff has not engaged in substantial gainful activity

since June 14, 2018, the alleged onset date.  AR 27 (citing 20 C.F.R. §§ 404.1571 *et*

*seq*. and 416.971 *et seq*.).

**Step two:** Plaintiff has the following severe impairments that are medically

determinable and significantly limit the ability to perform basic work activities as

required by SSR 85-28: degenerative disc disease; gunshot wound to the left upper

extremity; post-traumatic stress disorder; depressive disorder; and anxiety disorder.

AR 27 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

**Step three:** The ALJ concluded that Plaintiff does not have an impairment, or

combination of impairments, that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  AR 27–28.

---

[3] No first name is indicated in the transcript.

The ALJ memorialized that she considered Plaintiff's residual symptoms from his gunshot wound under listing 1.02, which addresses major dysfunction of a joint and "requires lost ability to perform fine and gross movements in both upper extremities."  AR 27.  In addition, the ALJ found that Plaintiff's chronic back pain is not severe enough to meet or medically equal section 1.04 of Appendix 1, addressing disorders of the spine.  AR 27.

In considering whether Plaintiff's mental impairments are of listing-level severity, the ALJ addressed the "paragraph B" criteria with respect to listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) and found that Plaintiff's impairments do not result in one extreme limitation or two marked limitations in a broad area of functioning.  AR 27–28.

The ALJ found that Plaintiff is moderately limited in: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace.  AR 28.  The ALJ found that Plaintiff has no limitation in adapting or managing oneself.  AR 28.  The ALJ cited to portions of the record in explaining her findings.  AR 28.

The ALJ also memorialized her finding that the evidence in Plaintiff's record fails to satisfy the "paragraph C" criteria, as Plaintiff stated that he could care for his daily personal needs, including hygiene and meal preparation.  AR 28.

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 4

**RFC:** The ALJ found that Plaintiff can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [H]e can occasionally perform the following with the left upper extremity: fine fingering, gross handling, and fine feeling. He can frequently crouch, crawl, kneel, stoop, balance, and climb ramps, stairs, ladders, ropes, or scaffolds. The claimant can perform simple repetitive tasks in two-hour increments; work in the same room with coworkers but not in coordination with them; and can work superficially and occasionally with the general public. He can adapt to simple workplace changes.

AR 28–29.  In formulating Plaintiff's RFC, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 30.

**Step four:** The ALJ found that Plaintiff is unable to perform past relevant work as a die cutter (medium, unskilled work); strapping machine operator (heavy, semi-skilled work); machine offbearer (medium, unskilled work), and bus person (medium, unskilled work) because Plaintiff's RFC limits him to performing no more than light work.  AR 32 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a) and 416.965).

**Step five:** The ALJ found that Plaintiff has at least a high school education and was 36 years old, which is defined as a younger individual (age 18-49), on the

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 5

alleged disability onset date.  AR 32 (citing 20 C.F.R. §§ 416.1563, 416.963, 416.1564, and 416.964).  The ALJ found that transferability of job skills is not an issue because "using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."  AR 32 (SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). The ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy.  AR 32–33.  Specifically, the ALJ recounted that the vocational expert identified the following representative occupations that Plaintiff would be able to perform with the RFC: office helper (light, unskilled work with 75,000 jobs available nationwide); courier (light, unskilled work with 74,000 jobs available nationwide); and mailroom clerk (light, unskilled work with 101,000 jobs available nationwide).  AR 33.

The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act at any time since filing his applications for a period of disability, DIB, and SSI on February 6, 2019.  AR 34.

Through counsel, Christopher Dellert, Plaintiff sought review of the ALJ's decision in this Court.  ECF No. 1.

/ / /

/ / /

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 6

# LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record, not just the evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

1    A decision supported by substantial evidence still will be set aside if the

2    proper legal standards were not applied in weighing the evidence and making a

3    decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

4    1988).  Thus, if there is substantial evidence to support the administrative findings,

5    or if there is conflicting evidence that will support a finding of either disability or

6    nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

7    812 F.2d 1226, 1229–30 (9th Cir. 1987).

8        ***Definition of Disability***

9        The Act defines "disability" as the "inability to engage in any substantial

10   gainful activity by reason of any medically determinable physical or mental

11   impairment which can be expected to result in death, or which has lasted or can be

12   expected to last, for a continuous period of not less than 12 months."  42 U.S.C. §

13   423(d)(1)(A).  The Act also provides that a claimant shall be determined to be under

14   a disability only if the impairments are of such severity that the claimant is not only

15   unable to do their previous work, but cannot, considering the claimant's age,

16   education, and work experiences, engage in any other substantial gainful work

17   which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Thus, the

18   definition of disability consists of both medical and vocational components.  *Edlund*

19   *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

20   / / /

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 8

***Sequential Evaluation Process***

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R §§ 416.920, 404.1520. Step one determines if they are engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that they have performed in the past. If

the claimant can perform their previous work, the claimant is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering their residual functional capacity and age, education, and past work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents them from engaging in their previous occupation.  *Meanel*, 172 F.3d at 1113.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

/ / /

/ / /

/ / /

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

## ISSUES ON APPEAL

The parties' briefs raise the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously discount Plaintiff's subjective symptom statements regarding his mental impairments?

2.    Did the ALJ err in her treatment of medical source opinions?

### *Plaintiff's Subjective Symptom Testimony*

Plaintiff argues that the ALJ failed to offer specific, clear, and convincing reasons for finding Plaintiff's statements about his limitations related to his mental impairments. ECF No. 12 at 4. Specifically, Plaintiff contends that the ALJ's recitation that Plaintiff did not have a history of psychiatric hospitalizations or suicide attempts, had unremarkable mental status examinations, and reported feeling less anxious and agitated at an October 2018 treatment visit were insufficient reasons to discount Plaintiff's statements. *Id.* at 6 (citing AR 30, 341). Plaintiff further argues that the ALJ failed to specify which of Plaintiff's allegations she was rejecting. *Id.* at 7 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("We cannot review whether the ALJ provided specific clear, and convincing reasons for rejecting [Lambert's] pain testimony where, as here, the ALJ never identified which testimony she found credible, and never explained which evidence contradicted that testimony."). Plaintiff continues that the ALJ ignored some of the evidence that supported Plaintiff's allegations and "expressed unrealistic expectations as to the level of dysfunction Plaintiff needed to display in order to qualify for benefits in

1    noting that Plaintiff had not been hospitalized or attempted suicide." *Id.* at 7–8.

2    Plaintiff also argues that the ALJ misinterpreted Plaintiff's reports that his symptoms

3    increased when he discontinued his medications because Plaintiff had not been able

4    to resume working even when taking his medications, "calling into question that

5    [sic] extent of any improvement that he had experienced." *Id.* at 9 (citing *Attmore v.*

6    *Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) ("An ALJ cannot simply 'pick out a few

7    isolated instances of improvement over a period of months or years' but must

8    interpret 'reports of improvement' . . . with an understanding of the patient's overall

9    well-being and the nature of her symptoms."). Plaintiff adds that the ALJ was

10    required to consider that Plaintiff could not afford his medications when he did not

11    have insurance and was not working. *Id.* at 9.

12        The Commissioner responds that the ALJ "thoroughly assessed Plaintiff's

13    mental impairments" and properly concluded that Plaintiff had some mental

14    limitations, but "certainly not to a disabling degree." ECF No. 14 at 5. The

15    Commissioner submits that the record supports that, in October 2018, "Plaintiff's

16    medical provider released him from his short-term medical leave and his mental

17    status examination was within normal limits." *Id.* (citing AR 341, 343–45).

18    Moreover, Plaintiff presented at "an independent psychological evaluation in

19    January 2020, Patrick Metoyer, Ph.D., with appropriate dress, . . . a goal-directed

20    thought process, and normal speech." *Id.* (citing AR 443). The Commissioner adds

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 12

that "Dr. Metoyer found Plaintiff to have a cooperative and engaged attitude a [sic] depressed mood with congruent affect, full orientation, and some difficulty with concentration and memory but overall to be within normal limits." *Id.* The Commissioner further argues that the ALJ could reasonably rely on evidence that Plaintiff's mental health symptoms improved with treatment, as the Ninth Circuit evidence has recognized that as an indicator of lack of disability. *Id.* at 6 (citing *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999)). The Commissioner continues that the ALJ provided adequate reasoning in the form of citation to objective medical evidence as well as evidence that Plaintiff received only conservative mental health treatment, without any history of psychiatric hospitalizations or suicide attempts. *Id.* at 7 (AR 30, 342, 363, 379; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Plaintiff replies that the ALJ "engaged in a selective reference to the record." ECF No. 15 at 3. Plaintiff asserts that, "[w]hile some treatment notes may have described Plaintiff's presentation as unremarkable, other notes demonstrated that he continued to manifest symptoms even while limiting his contact with others and not facing the pressures and expectations of a work setting." *Id*. (citing AR 348, 361, 363, 417).

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

is no evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of [his] symptoms only by offering specific, clear and convincing

reasons for doing so."  *Smolen*, 80 F.3d at 1281.

There is no allegation of malingering in this case.  Plaintiff alleged the

following impairments, as summarized in the ALJ's decision:

> The claimant is a 42-year-old male alleging disability because of back
> pain, left arm pain following a gunshot wound, and mental health
> concerns. The claimant stated that he is right hand dominant. He last
> worked in June 2018 in manufacturing and stopped working because
> he "lost [his] cool" after a racially motivated incident. He testified that
> he has difficulty with his left arm and previous continual use
> requirements caused him to stop working. He worried about possible
> altercations with coworkers because of his mental health symptoms. At
> a January 2020 examination, he told the examiner he could stand and
> sit for about 45 minutes each and lift and carry up to 50 pounds on the
> right side, but cradled items with his left hand.

AR 29.

With respect to psychological impairments, the ALJ found that Plaintiff "has

had treatment for several mental health conditions throughout the period at issue."

AR 30.  The ALJ found that the record indicated that Plaintiff's treatment included

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 14

1  individual therapy, group therapy, and prescription medications and that "[w]hen he

2  discontinued medication because of lack of insurance coverage, he reported an

3  increase in symptoms, indicating medication had been effective." AR 30 (citing AR

4  341–43, 358–60, 363, and 379). The ALJ determined that Plaintiff "endorsed

5  symptoms of nightmares, detailed dreams, self-isolation, hypervigilance, difficulty

6  concentrating, difficulty sleeping, fatigue, and feelings of helplessness and

7  worthlessness." AR 30 (citing AR 341 and 441). The ALJ considered Plaintiff's

8  statements about the effect of his psychological impairments in light of the

9  following:

> The claimant has no history of psychiatric hospitalizations or suicide
> attempts. He had unremarkable mental status exams throughout the
> period at issue. In October 2018, he told his doctor that he was feeling
> less anxious, less agitated, and sleeping better. At this time, he was
> advised he could return to work without restrictions.

13  AR 30 (citing AR 341, 342, 344, 363, 417).

14  Plaintiff contends that the ALJ displayed "unrealistic expectations" in noting

15  Plaintiff's lack of history of psychiatric hospitalizations and suicide attempts. ECF

16  No. 12 at 7–8. Plaintiff is correct that the ALJ could have erred in emphasizing

17  Plaintiff's lack of inpatient hospitalization, in that courts in the Ninth Circuit have

18  found that "a lack of inpatient hospitalization is not evidence of conservative

19  treatment in the context of complex mental health disorders." *Elijah L. S. v. Comm'r*

20  *Soc. Sec. Admin.*, Case No. 3:20-cv-1089-AR, 2022 U.S. Dist. LEXIS 230396, *10

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 15

(D.Or. Dec. 22, 2022) (collecting cases from D.Or.).  However, ALJs may consider a claimant's treatment record evidencing improvement and a history of unremarkable presentation to treatment providers.  *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  Substantial evidence supporting those considerations must be "more than a mere scintilla," meaning only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Reading the ALJ's reasoning as a whole, the ALJ cited to treatment records indicating that Plaintiff reported improvement while participating in counseling and taking medication, and Plaintiff's treating provider interpreted his improvement as being sufficient to return to work without restrictions within the relevant period.  *See* AR 30, 341–43, 358–60, 363, 379, 417, and 443.  The ALJ also cited records indicating that Plaintiff frequently presented at appointments in an unremarkable psychological state.  *See id.* Therefore, even if other evidence in the record could have supported a different conclusion, the ALJ gave specific, clear, and convincing reasons for finding that, while Plaintiff's alleged psychological symptoms are present, they are not so severe

1    as to prevent Plaintiff from working with the restrictions contained in Plaintiff's

2    RFC.  In addition, even if the ALJ erred in her reasoning regarding lack of

3    hospitalizations and suicide attempts, that error is harmless in light of the other

4    sufficient reasons that she provided.

5        Accordingly, the Court finds no basis to enter judgment for Plaintiff

6    predicated on the ALJ's treatment of Plaintiff's subjective symptom testimony.

7        ***Medical Source Opinions***

8        Plaintiff next argues that the ALJ erred in assessing the opinions of medical

9    sources Patrick Metoyer, PhD and Thomas Genthe PhD.  ECF No. 12 at 10–13.

10    Plaintiff argues that the ALJ failed to incorporate Dr. Metoyer's opinion that

11    Plaintiff would be unable to attend work regularly into Plaintiff's RFC, despite

12    finding Dr. Metoyer's opinion to be persuasive.  *Id.* at 13–14.  With respect to Dr.

13    Genthe, Plaintiff argues that the ALJ erred in discounting the opinion for being

14    based on Plaintiff's subjective reporting because psychiatric evaluations "will, of

15    necessity, be based to some degree on the individual's subjective reporting."  *Id.* at

16    15 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)).

17        The Commissioner responds that the ALJ properly considered the opinions of

18    Drs. Metoyer and Genthe.  ECF No. 15 at 8–9.  The Commissioner argues that the

19    ALJ was not required to adopt each of Dr. Metoyer's limitations, citing authority for

20    the proposition that the ALJ "can consider some portions [to be] less significant than

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 17

1   others when evaluated against the record evidence." *Id.* at 9 (citing *Magallanes v.*

2   *Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).  Moreover, the Commissioner continues,

3   the ALJ does not need to rely on any particular physician to formulate the limitations

4   in a claimant's RFC, as the RFC is "a legal finding, not a medical finding[." *Id.* at

5   9–10 (citing 20 C.F.R. § 404.1546(c); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

6   Cir. 2001)).  The Commissioner argues that the ALJ, in addition, offered sufficient

7   reasons for discounting Dr. Genthe's opinion, specifically that the opinion was not

8   consistent with other evidence of record and that Dr. Genthe relied heavily on

9   Plaintiff's own recount of his symptoms that were properly discounted.  *Id.* at 11–12

10  (citing AR 30, 445, 460–61; 20 C.F.R. § 1520c(a)(2); *Morgan v. Comm'r*, 169 F.3d

11  595, 602 (9th Cir. 1999)).  The Commissioner adds that "Dr. Genthe's evaluation

12  appears to have been subject to an internal review by Luci Carstens, Ph.D.[,] and Dr.

13  Carstens also noted the lack of objective support for some of Dr. Genthe's opined

14  limitations" and, as a result "downgraded several of Dr. Genthe's recommended

15  functional limitations."  *Id.* at 12 (citing AR 462).

16          Plaintiff replies that the ALJ's "failure" to include Dr. Metoyer's limitation in

17  Plaintiff's ability to attend work regularly or explain why she did not include the

18  limitations "resulted in a substantial likelihood of prejudice and, therefore, "was

19  harmful error."  ECF No. 15 at 5 (citing *McLeod v. Astrue*, 640 F.3d 881, 888 (9th

20  Cir. 2011) ("[W]here the circumstances of the case show a substantial likelihood of

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 18

1  prejudice, the reviewing court can remand the case so the agency may reconsider the

2  claimant's eligibility for benefits.").

3       The regulations that took effect on March 27, 2017, provide a new framework

4  for the ALJ's consideration of medical opinion evidence and require the ALJ to

5  articulate how persuasive she finds all medical opinions in the record, without any

6  hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the

7  Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18,

8  2017).  Instead, for each source of a medical opinion, the ALJ must consider several

9  factors, including supportability, consistency, the source's relationship with the

10  claimant, any specialization of the source, and other factors such as the source's

11  familiarity with other evidence in the claim or an understanding of Social Security's

12  disability program.  20 C.F.R. § 404.1520c(c)(1)-(5).

13       Supportability and consistency are the "most important" factors, and the ALJ

14  must articulate how she considered those factors in determining the persuasiveness

15  of each medical opinion or prior administrative medical finding.  20 C.F.R. §§

16  404.1520c(b)(2); 416.920c(b)(2).  With respect to these two factors, the regulations

17  provide that an opinion is more persuasive in relation to how "relevant the objective

18  medical evidence and supporting explanations presented" and how "consistent" with

19  evidence from other sources the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1);

20  416.920c(c)(1).  The ALJ may explain how she considered the other factors, but is

21

1    not required to do so, except in cases where two or more opinions are equally well-

2    supported and consistent with the record.  20 C.F.R. §§ 404.1520c(b)(2), (3);

3    416.920c(b)(2), (3).  Courts also must continue to consider whether the ALJ's

4    finding is supported by substantial evidence.  *See* 42 U.S.C. § 405(g) ("The findings

5    of the Commissioner of Social Security as to any fact, if supported by substantial

6    evidence, shall be conclusive . . . .").

7         Prior to revision of the regulations, the Ninth Circuit required an ALJ to

8    provide clear and convincing reasons to reject an uncontradicted treating or

9    examining physician's opinion and provide specific and legitimate reasons where the

10   record contains a contradictory opinion.  *See Revels v. Berryhill*, 874 F.3d 648, 654

11   (9th Cir. 2017).  However, the Ninth Circuit has held that the Social Security

12   regulations revised in March 2017 are "clearly irreconcilable with [past Ninth

13   Circuit] caselaw according special deference to the opinions of treating and

14   examining physicians on account of their relationship with the claimant."  *Woods v.*

15   *Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22,

16   2022).  The Ninth Circuit continued that the "requirement that ALJs provide

17   'specific and legitimate reasons' for rejecting a treating or examining doctor's

18   opinion, which stems from the special weight given to such opinions, is likewise

19   incompatible with the revised regulations."  *Id*. at *15 (internal citation omitted).

20   Recently, the Ninth Circuit has further held that the updated regulations comply with

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 20

both the Social Security Act and the Administrative Procedure Act, despite not requiring the ALJ to articulate how he or she accounts for the "examining relationship" or "specialization factors. *Cross v. O'Malley*, No. 23-35096, 2024 U.S. App. LEXIS 302 at *7–12 (9th Cir. Jan. 5, 2024).

Accordingly, as Plaintiff's claim was filed after the new regulations took effect, the Court refers to the standard and considerations set forth by the revised rules for evaluating medical evidence. *See* AR 216–29.

Dr. Metoyer completed a mental evaluation of Plaintiff on January 19, 2020. AR 441–46. Dr. Metoyer concluded his evaluation with a functional assessment of Plaintiff in which he offered several opinions, including that Plaintiff's "ability to complete a normal workday or work week without any interruption from anxiety, PTSD, mood symptoms, psychotic symptoms, [and] OCD symptoms is likely moderately to severely impaired." AR 445. However, Dr. Metoyer opined in the next paragraph that Plaintiff "has moderate difficulty completing a normal workday and workweek without interruptions from psychologically based symptoms." AR 445. Dr. Metoyer discussed Plaintiff's mild to moderate difficulty in several other functional areas relating to work. AR 445.

ALJ Valente considered Dr. Metoyer's opinion in formulating Plaintiff's RFC and reasoned:

> Patrick Metoyer, Ph.D., conducted a consultative psychological evaluation of the claimant in January 2020 and opined the claimant had

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 21

1

2

3

4

5

an overall moderate severity rating based on the combined impact of his mental health impairments and offered a long list of mild or moderate areas in which the claimant would have difficulties. Ex. 10F, p. 7. The undersigned finds this opinion persuasive, as it is consistent with the underlying mental status exam and the longitudinal record, which shows minimal mental health treatment except for psychotropic medications. The above residual functional capacity reflects mental restrictions assessed by Dr. Metoyer to account for the claimant's symptoms.

6

AR 30.

7

Plaintiff argues that ALJ Valente was required to address why she did not

8

accept one of the limitations to which Dr. Metoyer opined. ECF No. 15 at 5.

9

However, Dr. Metoyer's report is ambiguous as to whether he is actually opining

10

that Plaintiff has a severe impairment in his ability to maintain regular attendance at

11

work, and ALJ Valente acknowledged and found persuasive Dr. Metoyer's overall

12

opinion that Plaintiff is moderately limited. *See* AR 445 (stating in one paragraph

13

that Plaintiff is moderately to severely impaired in his ability to complete a normal

14

workday due to his psychological impairments and, in the next paragraph, stating

15

only that Plaintiff is moderately impaired). Moreover, Plaintiff does not cite any

16

authority requiring the ALJ to address each separate functional limitation, including

17

those that are ambiguous, in a medical source's opinion. *See* ECF Nos. 12 and 15.

18

The ALJ addressed the most important factors of consistency and supportability,

19

finding Dr. Metoyer's overall moderate severity rating to be supported by Dr.

20

Metoyer's "long list of mild or moderate areas in which the claimant would have

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 22

1    difficulties" and Dr. Metoyer's mental status examination of Plaintiff, as well as

2    consistent with Plaintiff's longitudinal record, which the ALJ discusses earlier in the

3    decision.  *See* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); AR 30, 445.

4        Dr. Genthe conducted a consultative examination of Plaintiff on September

5    10, 2020.  AR 455–63.  Dr. Genthe opined that Plaintiff has mild limitations in six

6    categories of basic work activities, moderate limitations in three categories, and

7    marked limitations in four categories.  AR 458.  Dr. Genthe did not indicate an

8    overall severity rating based on the combined impact of Plaintiff's psychological

9    impairments.  AR 458.  Dr. Genthe opined that Plaintiff's impairments would last

10   for nine to twelve months.  AR 459.

11       ALJ Valente reasoned that Dr. Genthe's opinion was not persuasive because

12   of internal inconsistencies and Dr. Genthe's "notation that the claimant could work

13   with vocational rehabilitation."  AR 31.  ALJ Valente further reasoned that "[t]he

14   documented mental status exam does not support the assessed marked limitations

15   and it appears that Dr. Genthe relied more on subjective statements than any

16   objective findings."  AR 31.

17       Dr. Genthe's report indicates that his mental status examination, which was

18   conducted by telephone during the COVID-19 pandemic, resulted in unremarkable

19   findings.  AR  460.  The only notable finding is that Plaintiff reported that his mood

20   was "a little anxious."  AR 460.  Dr. Genthe also marked Plaintiff's memory as

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 23

being outside of normal limits, but, inconsistently, added that Plaintiff "was able to accurately repeat the words 'pear,' 'flute,' 'table' [sic] and 'daisy,'" although Plaintiff could not recall objects after a five-minute delay.  AR 460–61.  Dr. Genthe also found Plaintiff's concentration outside of normal limits for incorrectly spelling "world" backwards and forwards, and incorrectly multiplying 25 by seven, but wrote that Plaintiff "had no difficulty following the conversation."  AR 461. Consequently, substantial evidence supports ALJ Valente's reasoning that Dr. Genthe's opinion had internal inconsistencies.  In addition, ALJ Valente could find Dr. Genthe's opinion unsupportable for being based on subjective complaints by Plaintiff that could also be legitimately discounted.  *See Alexander v. Saul*, 817 Fed. Appx. 401, 403 (9th Cir. 2020); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Accordingly, the Court finds no error in the ALJ's treatment of medical source opinions, and, finding no merit in the final issue raised by Plaintiff, directs entry of judgment for the Commissioner.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Opening Brief, **ECF No. 12**, is **DENIED**.

2.  Defendant the Commissioner's Brief, **ECF No. 14**, is **GRANTED**.

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 24

1    4.   Judgment shall be entered for Defendant.

2    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

3    Order, enter judgment as directed, provide copies to counsel, and **close the file** in

4    this case.

5    **DATED** January 10, 2024.

6

7                                    _s/ Rosanna Malouf Peterson_
                                     ROSANNA MALOUF PETERSON
                                     Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 25